JOSEPH ANDERSON, APPELLANT, V. VALLEY FEED YARDS, INC., A CORPORATION, APPELLEE.

123 N. W. 2d 839

Filed October 11, 1963. No. 35384.

Lyle Q. Hills, for appellant.

McGinley, Lane, Mueller & Shanahan, Kennedy, Holland, DeLacy & Svoboda, and Jesse D. Cranny, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

White, C. J.

This is a tort action by the plaintiff, Joseph Anderson, for injuries sustained on July 1, 1956, when he dove into shallow water from a diving platform constructed on the edge of a lake on premises owned by the defendant, Valley Feed Yards, Inc. The defendant's amended answer admits ownership; alleges that a lease of the premises was made in September 1949 to Nebraska Lakes, Inc., for resort purposes, including the swimming area; and alleges that the diving platform and swimming facilities were constructed during the period of resort operation by the Nebraska Lakes, Inc., under the lease. On motion for summary judgment, after depositions, exhibits, affidavits, and requests for admission were received in evidence, the trial court sustained the defendant's motion for summary judgment.

The questions presented by the assignments of error are twofold:

1. Was the written agreement between the defendant, Valley Feed Yards, Inc., and Nebraska Lakes, Inc., a lease or was it a contract creating Nebraska Lakes, Inc., an agent of the defendant in operating the resort premises, including the swimming and diving area?

2. Assuming that the contract was a lease of the premises from the defendant to the resort operator, Nebraska Lakes, Inc., was there liability on the part of the defendant lessor for negligence in the construction and maintenance of the diving board and platform by the lessee in conducting a resort open to and used by the public for a paid consideration?

The defendant owns land containing approximately five lakes created many years ago as the result of excavation under a sand and gravel lease. This land abuts the Platte River. On September 10, 1949, about 7 years before the accident and about 5 years before the installation of the diving board at the swimming area of the resort, the defendant and Nebraska Lakes, Inc., entered into a written "lease" agreement. This agree-

ment undisputedly declares and defines the rights, duties, obligations, and the power to use and control the defendant's land involved in this action. The agreement is called a "lease" and throughout is characterized by the use of terms and language importing and declaring the relationship of landlord and tenant as it is commonly understood in legal terms. The premises are legally described, and the Nebraska Lakes, Inc., agrees to "use and occupy" the premises for resort purposes for a period of over 23 years. Reservations by the lessor on the unrestricted use of the premises which it did "demise and lease" to Nebraska Lakes, Inc., are provisions as to prohibit the removal and damaging of fences and trees without the written consent of the lessor, a reservation of the right of inspection of the premises, the right to use the roads for the use of the lessor's vehicles, restrictions against subletting without written consent of the lessor, and a requirement that the lessee keep and operate the business in a lawful manner. The lessor reserves the right to grow crops on the premises, reserves ownership in tenant-constructed buildings on termination of the lease, and provides for reentry and control of the premises in the event of default in the payment of rent or the performance of other covenants by the lessee, Nebraska Lakes, Inc. The lease provides for rental payments of a flat sum per year plus a percentage of the gross income from the operation of the resort. The lease was subject to the preexisting lease rights of the Lyman Richey Sand & Gravel Company to remove gravel and sand.

Evidence was introduced by both parties as to the actual operation of the resort. The officers and managers of Valley Feed Yards, Inc., and Nebraska Lakes, Inc., testified. It is not asserted that there is any other, further, or different evidence than that which was introduced. Their testimony is in substantial agreement and undisputed. It demonstrates that Nebraska Lakes, Inc., took possession under the lease of September 10,

1949, and had operated and was operating a resort on the premises at the time of the accident in conformity to the terms of the lease agreement. There is no evidence that the defendant directed or attempted to direct the operation or management of the resort in any respect. The evidence is conclusive that Nebraska Lakes, Inc., as lessee, selected the portion of the property to be used for the swimming area and the installation of the diving board; that it hired and fired its employees; and that it determined the gate charges, hours, and all of the details as to manner of operation. It constructed, repaired, and maintained all of the structures used for resort and swimming purposes. It equipped the swimming area with piers and floats, and about 4 or 5 years after the commencement of the lease, it constructed the diving platform and board involved in the plaintiff's accident and injury. The only conclusion that could be drawn from all of the testimony is that Nebraska Lakes, Inc., was the sole and exclusive operator of the resort and swimming area. The defendant never interfered with, or had the right to interfere with, the exclusive control and operation by Nebraska Lakes, Inc., of the resort and swimming area. The plaintiff cites Brasier v. Cribbett, 166 Neb. 145, 88 N. W. 2d 235, where the question of whether an agreement for the operation of an airport constituted an agency or a lease was before the court. In holding that an agency was created because supervisory authority over operations of the business of the airport was retained by the purported lessor and that the purported lessee was devoid of the requisite control and possession of the premises, we laid down the following rule as a testing yardstick in such cases: "In Valentine Oil Co. v. Powers, 157 Neb. 87, 59 N. W. 2d 160, this court said: 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. * * * The distinguishing features of agency are its

representative character and its derivative authority. Whether a particular relationship is an agency depends on the relations of the parties as they in fact exist, without regard to what they call their relationship.' See, also, Restatement, Agency, § 1, p. 7; 2 C. J. S., Agency, § 2, p. 1026."

In Restatement, Agency, § 1, p. 7, it is stated: "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

As the plaintiff states, where there is control, there is agency. Here, either in the lease agreement or in the actual operation of the swimming area or resort, there is a complete absence of the retention of supervisory authority over the defendant. There was a grant of possession and control of all of the premises for the operation of the swimming area and resort with the manner of conduct and operation of the business resting solely in Nebraska Lakes, Inc. Reservations and restrictions in the lease as to cropping rights, subletting, right of inspection, right to reentry in default, use of roads, and rights of a previous lessee to mine sand and gravel could in no way alter this conclusion, and authority supporting such a conclusion is not cited. We point out that the reserving of rights existing in the landlord at the time of the lease is not proof of affirmative control, direction, and supervisory authority of the business operated by the lessee on the premises. Nor does the provision for payment of a percentage of the gross revenue of the resort operation as rental alter the existence of the relationship of landlord and tenant and create an agency. Van Avery v. Platte Valley Land & Investment Co., 133 Neb. 314, 275 N. W. 288. From what has been said, it is clear that the contention of the plaintiff that an agency relationship existed cannot be sustained.

The plaintiff next contends that even assuming the only relationship present was that of lessor and lessee,

the defendant lessor leased the premises for a public purpose, knew that members of the public were generally invited, and owed the duty to protect the plaintiff against the dangerous condition of the swimming area with its diving platform and board. The undisputed evidence is that the lake or pond had been in existence for many years prior to the lease agreement of September 10, 1949. Undisputed is the fact that all of the artificial conditions, the piers, the floats, and the other equipment and structures were placed on the premises by the lessee, Nebraska Lakes, Inc., *after the lease agreement went into effect*. The diving platform and springboard were constructed by the lessee itself and placed on the premises 4 or 5 years later in 1953 or 1954. It is also undisputed that there was no covenant by the lessor to make repairs or improvements; that none were made by the lessor; and that the lessor exercised no control or performed any acts whatsoever in connection with their construction, placement, or operation.

Applicable here is the following from Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648: " 'Subject to limited exceptions, the general rule is that guests and invitees of the tenant derive their right to enter upon the premises leased through the tenant, and have the same but no greater right to proceed against the landlord for personal injuries resulting from alleged defects on the premises than the tenant has.' * * * the exceptions contemplated by this statement have no relation to conditions arising after leasing and surrender of control but only to those existing at the time of leasing."

The precise question as to a lessor's duty toward invitees on premises leased for a public purpose was passed on in Nelson v. Hokuf, 140 Neb. 290, 299 N. W. 472, wherein it was declared: "In Van Avery v. Platte Valley Land & Investment Co., 133 Neb. 314, 275 N. W. 288, this court approved the following rules. 'Subject to specific exceptions, the lessor of land is not liable for

bodily harm caused to his lessee, or others upon the demised land with the consent of the lessee or sublessee, by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.' 'Where, however, premises are leased for a public or semipublic purpose, and the lessor knows at the time of leasing that a dangerous condition exists thereon which renders the premises unsafe for the public use intended, the lessor is liable for injuries sustained by patrons of such lessee who, upon invitation express or implied, are admitted to such demised premises to make use of the same for the particular purpose for which it was leased.' "

Perhaps the most succinct statement of the rule applicable to a lease for public purposes is the following from Restatement of the Law of Torts, § 359, p. 971, quoted in Van Avery v. Platte Valley Land & Investment Co., *supra:* " 'A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee, is subject to liability for bodily harm caused to them by an artificial condition *existing when the lessee took possession,* if the lessor * * * (a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein, and * * * (b) had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception.' "

That the lake or pond itself did not constitute a dangerous condition or a nuisance is well settled. City of Omaha v. Bowman, 52 Neb. 293, 72 N. W. 316, 66 Am. S. R. 506, 40 L. R. A. 531; Toft v. City of Lincoln, 125 Neb. 498, 250 N. W. 748; Robbins v. City of Omaha, 100 Neb. 439, 160 N. W. 749.

The conditions and requirements of these applicable rules not having been met, it is clear that there was no duty imposed on the lessor as to the diving board and other artifical conditions placed and constructed on the premises after the commencement of the lease.

We, therefore, reach the ultimate conclusion that under the undisputed facts and circumstances of this case, the rights reserved and retained by the lessor were not the proximate cause of the plaintiff's injuries, nor could such retention of rights by the lessor be made the basis of a duty to construct or reconstruct or change improvements and conditions made exclusively by the lessee, or to make the added improvements reasonably safe for lessee's invitees.

Under the applicable rules as to motion for summary judgment, the pleadings have been pierced to show conclusively that no genuine issue of fact exists and that the defendant is entitled to judgment as a matter of law. The judgment of the trial court is correct and is affirmed.

AFFIRMED.