HERNAN CORTES, SPECIAL ADMINISTRATOR OF THE ESTATE OF DAVID CORTES, DECEASED, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

218 N. W. 2d 214

Filed May 16, 1974. No. 39193.

Donald B. Fiedler of Fiedler & Fiedler, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and BRODKEY, JJ.

CLINTON, J.

This is an action brought against the State of Nebraska

under the State Tort Claims Act, sections 81-8,209 to 81-8,235, R. R. S. 1943, because of the death by drowning of David Cortes, age 15. The drowning occurred on August 13, 1970, in lake No. 2 at the Louisville State Recreation Area in Cass County, Nebraska. This is an area operated by the Nebraska Game and Parks Commission.

The principal claim of negligence relied upon by the plaintiff and the only one argued in this court is the alleged failure of the State to adequately warn by posting of signs or otherwise of an alleged dangerous and concealed condition in the lake at the site where the drowning occurred. The trial court made findings of fact which included: (1) The State was not required to post a no swimming sign at the beach in question. (2) The negligence, if any, of the defendant was not the proximate cause of the accident. (3) Contributory negligence of the plaintiff was sufficient to bar recovery. We affirm.

The evidence would permit the court to find the following as fact. David, accompanied by his father and the plaintiff, Hernan Cortes-Dias, his uncle, an Air Force Master Sergeant stationed at Offutt Air Force Base, together with other members of the families, went to the area for the purpose of picnicking. Near the entrance to the area and immediately adjacent to the road by which the parties made entrance was a sign "Swimming in Designated Areas Only." This sign was noticed by the plaintiff as the party entered. There is no evidence as to whether it was seen by David or his father. The park was crowded and the group first went to a beach area where the largest crowd of people were. There they found no empty table.

At this beach were located two bathhouses and between them a 4' x 4' sign reading: "SWIMMING permitted at this beach only. No glass, fires, or pets permitted. BEACH closed at 8:30 p.m." The swimming

area at this beach was marked by buoys. They observed neither the bathhouses nor the sign.

The group then went back to a beach which they had passed earlier. There was a smaller crowd of people wading in the water. There were no signs of any kind on the beach. Across the road from this beach was a vacant table. They ate their lunch and played ball. About 4 p.m. the plaintiff and David entered the water. David was using an inflated inner tube which his father had filled for him. The tube had not been taken with them for the specific purpose of using in the water and was used merely because of its availability. Neither David nor the plaintiff was a competent swimmer. David could "stay afloat," his father thought, as a consequence of some lessons he had taken at the "Y". David, while in the water, was seated in the inflated inner tube with his arms and legs over the side and his buttocks in the hole made by the tube. The plaintiff was grasping the tube with his hands and paddling with his feet, apparently pushing it ahead of him. The two went out beyond the waders a distance of 5 to 10 feet. David asked the plaintiff how deep the water was. The plaintiff lowered his body to try to touch bottom. He could not. They panicked. The tube capsized. David fell out and sank. The water was very deep. No one could bring him up.

The beach at which the drowning occurred had, since about 1964, a sign placed upon it which read: "No Swimming in This Area." It was the only such sign maintained by the commisison in any of the areas operated by it. The reason for the sign was that the beach was attractive, the water was shallow near shore and dropped off rapidly to a depth of 20 to 35 feet. This particular sign, together with many others in the park, had been vandalized and removed many times. The sign was removed by someone either the day of or within a few days previous to August 13, 1970. Someone who

found the removed sign took it to the person charged with the maintenance of the area. There it had remained and had not been replaced up to the time of the drowning. The Cortes party had no notice of the previous placement of this sign. The evidence shows that persons using the park and lake for swimming did not confine themselves to the designated area. Efforts were made to have the people observe the rules but without much success. The evidence shows a rather discouraging amount of lawlessness by park users in the form of vandalism and disregard of park regulations.

On an appeal to this court of an action under the State Tort Claims Act the findings of the trial court will not be disturbed unless clearly wrong. Craig v. Gage County, 190 Neb. 320, 208 N. W. 2d 82. The above case was decided under the Political Subdivision Tort Claims Act, however, the same principles are applicable under the State Tort Claims Act. That Act provides for liability on the part of the State under the same circumstances under which a private person would be liable, sections 81-8,210(4) and 81-8,215, R. R. S. 1943, but makes certain exceptions which are not applicable here. See § 81-8,219, R. R. S. 1943.

Both parties assert that David, while using the park, was a licensee. We accept the proposition that the term is properly applicable to persons using areas of the park open to the public and where the particular use is in conformity with valid governing regulations. Lindelow v. Peter Kiewit Sons', Inc., 174 Neb. 1, 115 N. W. 2d 776, is persuasive. Because of views we take on other issues we need not decide whether because David was using a portion of the park not open to swimming he lost his status as a licensee. Neither need we consider whether a status of invitee might exist under other circumstances such as where a designated swimming area is being so used for that purpose, or where a mem-

ber of the public pays a fee for the use of a swimming area and its facilities.

In Lindelow v. Peter Kiewit Sons', Inc., *supra*, an employer maintained a recreation lake and park for the use of its employees under rules similar to those usually in effect in public parks. An employee lawfully using the lake for swimming was held to be a licensee and the duty of the possessor-employer was held to be only to give notice of traps or concealed conditions. In that case the employee dove from a diving board and struck bottom. The employer was held not liable. The evidence showed the employee was familiar with the lake and with the fact that its depth and the position of the platform and diving board varied as the lake rose and fell.

A patron of a public park using an area of the park open to the public where such use is in conformity with valid park regulations is generally a licensee and the possessor of the park owes to him the duty to warn of traps and concealed hazards.

A body of water, natural or artificial, is generally held not to constitute a concealed, dangerous condition. Anderson v. Valley Feed Yards, Inc., 175 Neb. 719, 123 N. W. 2d 839. "The reason for this rule is that such places do not ordinarily create a condition of unnatural, concealed, or special danger, or involve an unreasonable risk of death or serious harm; the possible hazard of use is generally appreciated even by children . . . ." 65 C. J. S., Negligence, § 63(100), p. 850. Mere depth of water as such is not a hazard to a person of adequate swimming ability. The depth of a body of water may be unknown to the user, but the general nature of the potential hazard is not. It can be stated as a matter of fact that the public recognizes that bodies of water vary in depth and that sharp changes in the bottom may be expected. This is especially true in public parks since they are usually used for a multiplicity of

purposes, including boating, water skiing, fishing, and scuba diving. Deep water is essential for some of these purposes. Often these uses are secondary to some other use.

The trial court correctly found that the State was not required to post a "No Swimming" sign at the beach in question. What we have said also covers the finding of the trial court of contributory negligence on the part of David proximately causing his death. We add the comment that the use of flotation devices such as inner tubes and air mattresses, especially by persons whose ability to swim is inadequate or absent, is generally recognized as unusually dangerous because the devices are unstable and enable the user easily and inadvertently to reach areas which require skill beyond his ability or endurance.

AFFIRMED.