ERIK OLSON, APPELLANT, V. SANITARY & IMPROVEMENT DISTRICT NO. 177, A POLITICAL SUBDIVISION, ET AL., APPELLEES.

557 N.W.2d 651

Filed January 3, 1997.   No. S-95-080.

Timothy K. Kelso, of Rasmussen Mitchell & Kelso, and James E. Harris, of Harris, Feldman, Stumpf Law Offices, for appellant.

Patrick G. Vipond and Raymond E. Walden, of Kennedy Holland DeLacy & Svoboda, for appellee SID No. 177.

Terry K. Gutierrez, of Gast, Ratz & Gutierrez, P.C., for appellee Riverside Lakes Recreational Cooperative Assn.

Milton A. Katskee, of Katskee, Henatsch & Suing, for appellee Larry Tighe.

Thomas A. Otepka and Susan E. Fieber, of Gross & Welch, P.C., for appellee Charles Varvel.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

The plaintiff dove off a dock into shallow water and broke his neck. The trial court entered summary judgment in favor of the

defendants. The Nebraska Court of Appeals affirmed, and we granted the plaintiff's petition for further review.

## SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996).

## FACTS

On July 4, 1992, the plaintiff, Erik Olson, and his friend Scott Weidner went to Scott's grandparents' house at Riverside Lakes. Weidner's grandparents, Stanley and Myrtle Miller, lived in a townhome consisting of four private units. Each unit had its own section of beach, and every two units shared a stairway to the beach and a boat dock.

The dock located between the Millers and their closest neighbor, Jim Twiss, was for the use of those two units. The defendants Larry Tighe and Charles Varvel owned the two west units, and they, likewise, shared a dock. It was the residents' understanding that these docks were privately owned by the two units to which they corresponded and that one needed explicit permission to use another's dock.

The lake on which the Millers lived was owned by the defendant Sanitary & Improvement District No. 177 (SID 177). The lake was guarded by a gate which had a "no trespassing" sign stating that the lake was for the use of residents only. The residents of the lake were not required to pay a fee for use of the lake, but they paid real estate taxes to SID 177 which were used for the maintenance of the lake. The rules and regulations promulgated by SID 177 provided that persons who were neither residents nor guests of residents were to pay a fee to use the lake.

Olson, who was 21 years old at the time of the accident, had been going to the Millers' townhome since he was about 10

years old. He lived across the street from two of the Millers' grandchildren, Scott and Ted Weidner, and had been at the lake more times than he could count. On July 4, 1992, Olson, the Weidner brothers, and other friends went to the Millers' town-home to eat and enjoy the summer, lake activities.

Throughout the afternoon, Olson and other guests played volleyball, and in between games, Olson and the Weidner brothers dove off the Tighe-Varvel dock. Before doing so, however, Olson and Scott Weidner, in accordance with their customary practice, had tested the depth of the water to see where it was safe for diving. Olson testified he knew that there were some areas around the dock which were unsafe. For instance, Olson was aware that it was unsafe to dive directly off the end of the dock or to dive to the east of the dock.

Olson and Scott Weidner were able to locate a "target area" off the southwest corner of the Tighe-Varvel dock. Olson estimated that this area of greater depth was approximately 8 to 12 feet in diameter, but the precise parameters of the diving area were not clearly defined. Olson attributed this area of greater depth alongside the dock to "propwash," an area where the sand has been moved by a boat starting from a dead stop.

Olson successfully dove off the dock approximately five times that day. On the sixth dive, however, Olson dove some-what east of the target area in an attempt to miss Scott and Ted Weidner, who had immediately preceded him. Olson hit his head on the bottom of the lake and broke his neck. He now suffers permanent quadriplegia.

At the time of the accident, Tighe was out of town and unaware that the Millers' grandchildren and their guests were planning to use the dock. Although Tighe had once granted permission for the Millers' granddaughters to use the dock for sun-bathing, Tighe testified that he had never given the Millers "blanket permission" for their guests to use the dock. Tighe testified at his deposition that he had never seen anyone swimming or diving near his dock.

Varvel had also given the Millers' guests permission, on occasion, to use the Tighe-Varvel dock for sunbathing. However, Varvel did not give anyone blanket permission to use the dock, nor was there any evidence that he had given

the Millers permission to use the dock on the day of the accident. Varvel testified he was unaware that anyone had ever used the dock for diving or jumping. He did not see Olson and the others using the dock on July 4, 1992, because he was inside preparing for his guests, who were to arrive late in the afternoon.

Following the accident, Olson sued the owners of the units corresponding to the Tighe-Varvel dock and, in addition, sued SID 177 and the defendant Riverside Lakes Recreation Association, an unincorporated homeowners' association. Olson alleged that the defendants were, jointly and severally, negligent in failing to ascertain and maintain sufficient and safe water depth; in failing to warn users of the lake, in general, and the dock, in particular, of the dangerous and shallow condition of the lake surrounding the end of the dock; and in constructing or allowing to be constructed a hazardous, dangerous structure on or in the lake in the form of a dock without providing for protection from or warning of the dangers of use thereof.

Olson further alleged that Riverside Lakes Recreation Association, Tighe, and Varvel were jointly and severally negligent (1) in failing to enforce reasonably safe rules and regulations relating to the use of the lake and the docks; (2) in failing to promulgate and publish rules relating to jumping or diving from the docks; (3) in failing to warn users of the docks of the dangers of diving therefrom by conspicuously posting reasonably safe safety rules and regulations pertaining to diving; and (4) in adopting, publishing, and posting safety rules and regulations which did not include warnings for the protection of swimmers and divers.

Summary judgment was granted against Olson as to all of the defendants. The trial court held, inter alia, that at best, Olson had presented evidence that he was a licensee and that the only duty of the occupier to a licensee is to give notice of traps and concealed dangers, which a body of water is not. The trial court also held that Olson's assumption of risk and contributory negligence in the amount of more than 50 percent barred recovery as a matter of law.

## ASSIGNMENTS OF ERROR

Olson appealed the trial court's judgment to the Court of Appeals, where he made four assignments of error: The trial court erred (1) in sustaining the defendants' motions for summary judgment, (2) in finding Olson to be a mere licensee, (3) in finding that Olson had assumed the risk of his activities, and (4) in finding that Olson had been contributorily negligent in an amount greater than 50 percent. The Court of Appeals affirmed, and we granted Olson's petition for further review.

In his petition for further review, Olson argues that *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996), in which we held that a student attending a school-sponsored football clinic was an invitee, dictates that Olson be deemed an invitee and not merely a licensee. Therefore, Olson contends that the Court of Appeals necessarily applied the wrong standard of care and did not make a proper determination of comparative fault. In addition, Olson asserts that the Court of Appeals erred in finding that there was no issue of material fact as to whether Olson assumed the risk of diving into the lake.

## ANALYSIS

The determination of whether Olson had the status of an invitee or a licensee is governed by our decisions in *McIntosh v. Omaha Public Schools, supra*, and *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). For the reasons stated herein, we hold that Olson was, as a matter of law, no more than a licensee, and we affirm the decision of the Court of Appeals.

In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

We first address whether our decision in *Heins* applies to the case at bar. In *Heins*, we abrogated the distinction between a licensee and an invitee. However, we did so only prospectively, stating: "Considering that other litigants may have relied on our

previous rule and incurred time and expense in prosecuting or defending their claims, we conclude, with the exception of the instant case, that the rule announced today shall be applied only to all causes of action arising ·after this date." *Heins*, 250 Neb. at 762, 552 N.W.2d at 57. Olson's cause of action arose before *Heins*, and thus, *Heins* is without effect in the instant case. See *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996). Therefore, this case is governed by the premise that a landowner's duty of care depends upon whether the plaintiff is classified as a licensee, invitee, or trespasser.

The trial court determined that Olson was at most a licensee. A licensee is a person who is privileged to enter or remain upon the premises of another by virtue of the .possessor's express or implied consent, but who is not a business visitor. *McIntosh v. Omaha Public Schools, supra.* If an invitation to enter onto the premises relates to the business of the one who gives it or for the mutual advantage of both parties of a business nature, the party receiving the invitation is an invitee, but if the invitation is for the convenience, pleasure, or benefit of the person enjoying the privilege, it is only a license, and the person receiving it is a licensee. See *id.*

As to the defendants Tighe, Varvel, and Riverside Lakes Recreation Association, no argument is made, other than the public policy argument adopted by *Heins*, that Olson could be· anything more than a licensee. Olson paid no fee. Rather, Olson was a social guest whose presence was in no way related to a business purpose or advantage of his hosts.

However, Olson makes the argument that there is evidence from which a fact finder could determine that he was not a mere licensee, but, rather, was in fact an invitee with regard to SID 177. He argues that such an issue of fact is found in the evidence that the residents of the lake pay an annual real estate tax to SID 177. Residents paying such tax and their guests are entitled to use of the lake free of charge. In contrast, the general public is at least theoretically required to pay a fee for use of the lake.

In making the argument that he was an invitee, Olson relies upon *Ginn v. Lamp*, 234 Neb. 198, 450 N.W.2d 388 (1990); *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495

(1994); and *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). In *Ginn*, we reversed a directed verdict against the son of a tenant in a lakeshore development who was injured falling into shallow water while water skiing. In so doing, we limited our review to determining whether there was evidence from which a jury could find that the defendant acted as landlord over the property. We held that the evidence of the defendant's control over the property established a prima facie case of liability under a custodial agent theory. In *Ginn*, we did not determine whether the plaintiff was a licensee or an invitee. Therefore, *Ginn* is clearly not applicable to this case.

In *Palmtag*, we upheld the trial court's determination that the plaintiff, who was injured in the course of an arranged meeting with a contractor to review the progress of her house, was an invitee. We noted that the distinction between a licensee and an invitee rested on an "economic benefit" test. Under this test, one who enters upon the land of another is not entitled to the status of an invitee unless the visit is directly or indirectly connected to business dealings between them. We concluded that because the plaintiff had control over the construction work being done, her visit to the jobsite served the defendant's economic interest. Olson would clearly fail to establish an invitee relationship under the *Palmtag* economic benefit test because there were no business dealings between Olson and SID 177. Therefore, *Palmtag* also fails to have any application to the case at bar.

In *McIntosh*, the injured boy was participating in a football clinic on school property when he was hurt allegedly because of the condition of the field. The participants paid no fee and used no school equipment, but school officials admitted that the clinic was run by the school's varsity coaches, was a school-related function of the physical education program, and was a part of its football program. Recognizing that public schools are in the business of providing academic and physical fitness, the injured party was found to be an invitee because the invitation to participate in the clinic was mutually beneficial to both the student and the school.

In this case, Olson did not participate in any program or event offered by SID 177. SID 177, through taxation of real property, constructed and maintained two lakes for the recre-

ational use of the residents. It charged no fee to the residents or their guests for use of the lakes. Olson was a guest of two of the residents, and there is no evidence that SID 177 was even aware of Olson's presence. Olson admitted he did not pay any money to enter the premises, to use the lake, or to use the dock.

It could be argued that SID 177 was in the business of providing recreation to its residents and their guests and that it benefited from Olson's presence through his participation in such recreation and through tax revenues collected from the homeowners. However, we hold that any mutually beneficial relationship of a business nature between Olson and SID 177 is too remote to create an invitor-invitee relationship. We cannot further blur the distinction between invitees and licensees without effectively abrogating the distinction altogether. Such a retroactive abrogation was specifically rejected by this court in *Heins*.

Olson further argues that summary judgment is improper because there exists an issue of fact as to whether Olson was a licensee or a trespasser, because Tighe, Varvel, and Stanley Miller testified that Miller's grandchildren and their guests did not have the requisite permission to use the Tighe-Varvel dock. This may be an issue of fact, but it is not material to the case because the trial court correctly concluded that even if Olson were determined to be a licensee, he could not recover.

Under Nebraska law as it existed at the time of this accident, the owner or occupant of a premises owed only the duty to refrain from injuring a licensee by willful or wanton negligence or designed injury, or to warn the licensee of a hidden danger or peril known to the owner or occupant but unknown or unobservable by the licensee in the exercise of ordinary care. See *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996). In order for an action to be willful or wanton, the evidence must prove that the defendant had actual knowledge that a danger existed and that the defendant had a constructive intention as to the likely consequence. See *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988). Olson did not present evidence from which it could be inferred that any of the defendants acted willfully or wantonly.

It is also clear that the danger of missing the target area and diving into shallow water was not a hidden danger of which the

defendants would have a duty to warn. We have repeatedly held that a body of water, natural or artificial, does not constitute a concealed, dangerous condition. See, *Haden v. Hockenberger & Chambers Co.*, 193 Neb. 713, 228 N.W.2d 883 (1975); *Cortes v. State*, 191 Neb. 795, 218 N.W.2d 214 (1974); *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962). In *Cortes*, we noted, "It can be stated as a matter of fact that the public recognizes that bodies of water vary in depth and that sharp changes in the bottom may be expected." 191 Neb. at 799, 218 N.W.2d at 216-17.

Moreover, it is clear that Olson knew the lake varied in depth and was aware of the danger of diving into shallow water. Specifically, Olson knew that there were shallow areas near the Tighe-Varvel dock. However, he proceeded with Scott Weidner to locate a relatively small target area of deeper water. Olson knew that the precise parameters of the target area were not clearly defined. In fact, Olson testified he knew that the area directly south of the dock, toward which he dove on his final dive, was too shallow. As such, SID 177 did not breach its duty to Olson to warn of hidden dangers.

Having determined that *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), and *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996), are not applicable, we affirm the decision of the Court of Appeals.

AFFIRMED.

LANPHIER, J., participating on briefs.
FAHRNBRUCH, J., concurs.