ROBERT J. DARRAH, APPELLANT, V.
BRYAN MEMORIAL HOSPITAL, APPELLEE.
571 N.W. 2d 783

Filed January 9, 1998.    No. S-95-1391.

Denzel R. Busick, of Luebs, Leininger, Smith, Busick & Johnson, and Robert J. Parker, Jr., of Brock, Seiler & Parker, for appellant.

Brett W. Berg and, on brief, Kenneth C. Stephan, of Knudsen, Berkheimer, Richardson, Endacott & Routh, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and McCORMACK, JJ., and FAHRNBRUCH, J., Retired.

WHITE, C.J.

This is a medical malpractice action brought by Robert J. Darrah against Bryan Memorial Hospital (BMH) for injuries he allegedly sustained while hospitalized at BMH. The district court granted BMH's motion for summary judgment and dismissed Darrah's petition. Darrah appealed, and we removed this case to our docket pursuant to our power to regulate the caseload of the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

In January 1991, Darrah injured his lower back while attempting to push a disabled vehicle. Darrah's family physician diagnosed the injury as a "ruptured disc" and recommended back surgery. On March 27, Dr. Eric Pierson, a neurologist; Dr. Samuel Smith, an orthopedic surgeon; and Dr. Richard Petersen, Jr., an anesthesiologist, performed surgery on Darrah's back. The record reflects that all three doctors had staff privileges at BMH, but none were considered agents or employees of BMH.

Darrah asserts that while he was recovering from surgery, an intravenous line (IV) was inserted into his right arm to supply him with various medications. Darrah alleges the nurse had difficulty transferring and inserting the IV from his right to his left

arm, and claims the nurse made several unsuccessful attempts to insert the IV and eventually had to contact a supervising nurse. Darrah conceded he was uncertain whether the IV was switched to his right or his left arm. In addition, Darrah's medical chart indicates the IV was started in the left arm and later moved to the right, not right to left as Darrah contends. Moreover, the evidence does not reflect that any specific problems occurred with Darrah's IV.

The record reflects that neither arm pads nor arm boards were used before, during, or after surgery. Darrah's arms were not strapped down but were merely lying at his sides on the bed or gurney. The record is also devoid of any evidence indicating Darrah was dropped or that his ulnar nerve was exposed to overflexion.

Darrah remained hospitalized at BMH until April 4, 1991. Several days after surgery, Darrah noticed "tingling" and numbness in his left hand and arm. After leaving the hospital, Darrah experienced pain and loss of strength in his left hand and arm. On May 3, Darrah's family physician diagnosed him as having "ulnar neuritis."

As a result of the ulnar neuritis or ulnar neuropathy allegedly sustained at BMH, Darrah brought a medical malpractice action against BMH based on res ipsa loquitur. In response, BMH filed a motion for summary judgment. In ruling on the motion, the district court noted that the doctrine of res ipsa loquitur applies only when an instrumentality under the exclusive control of the alleged wrongdoer produces an injury which would not ordinarily occur in the absence of negligence by the alleged wrongdoer. The district court found that the damage to Darrah's ulnar nerve could have occurred during or after surgery while he was hospitalized at BMH. The district court stated:

> Putting aside the particular nature of the injury, it is clear that the requirement of exclusive control cannot be satisfied in view of the absence of the operating surgeons and the anesthesiologist as party defendants. These are parties who control the activities during surgery and they are neither agents [n]or employees of the defendant hospital.

Accordingly, the district court granted BMH's motion for summary judgment. Darrah filed a motion for reconsideration

and new trial or leave to amend, which was also overruled by the district court. Darrah filed a notice of appeal on October 31, 1996.

Darrah contends the district court erred in (1) sustaining BMH's motion for summary judgment, (2) incorrectly analyzing the law governing hospitals' nondelegable duty of care to patients, (3) incorrectly analyzing the law governing joint tortfeasors and concurrent causes of injury, and (4) denying Darrah the opportunity to amend his petition.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997); *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997). On a motion for summary judgment, the question is not how a factual issue is to be decided, but, rather, whether any real issue of material fact exists. *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997); *Vilcinskas v. Johnson*, 252 Neb. 292, 562 N.W.2d 57 (1997). Conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment. *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997).

Darrah initially argues that merely pleading res ipsa loquitur precludes summary judgment. Motions for summary judgment have been repeatedly granted in cases based on res ipsa loquitur. See, *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996); *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969). When the doctrine of res ipsa loquitur is utilized, the examination of whether there is a genuine issue of material fact must be related solely to the issues under the required elements of the doctrine. *McCall, supra.* If the doctrine of res ipsa loquitur is applicable, the inference of negligence itself presents a question of material fact, and summary judgment is improper. *Anderson, supra.* If, however, the doctrine of res ipsa loquitur is inapplicable as a matter of law and there is no material question of fact regarding actionable negligence,

summary judgment is proper. *Id.* Therefore, merely pleading res ipsa loquitur does not preclude this court, or any other, from granting summary judgment.

Darrah further argues that summary judgment should not be granted unless the issue is "clear beyond all doubt." Brief for appellant at 12. We have expressly disapproved "clear beyond all doubt" as the standard for summary judgment. See, *Dowis v. Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992); *Anderson, supra.* To the extent that *Andreasen v. Gomes*, 244 Neb. 73, 504 N.W.2d 539 (1993), holds to the contrary, it is disapproved.

Darrah's second and third assignments of error attempt to surmount the "exclusive control" requirement of res ipsa loquitur. Darrah claims BMH had exclusive control because hospitals have a nondelegable duty to render health care and because BMH and the operating team were joint tort-feasors. We find neither argument persuasive.

Darrah filed his claim against BMH under the doctrine of res ipsa loquitur. The doctrine provides that

> when an instrumentality under the exclusive control and management of the alleged wrongdoer produces an occurrence which would not, in the ordinary course of things, come to pass in the absence of the negligence of the one having such management and control, the occurrence itself, in the absence of explanation by the alleged wrongdoer, affords evidence that the occurrence arose as a result of the alleged wrongdoer's negligence.

*Widga v. Sandell*, 236 Neb. 798, 803, 464 N.W.2d 155, 158 (1991). Three factors must be demonstrated to trigger the application of res ipsa loquitur. First, the instrumentality causing the injury must be under the exclusive control of the defendant. Second, the injury must be one that would not ordinarily occur in the absence of negligence. Finally, the defendant cannot have an explanation/defense which precludes liability. See *id.*

Generally, the exclusive control requirement is satisfied if the injury resulted from an external force applied while the plaintiff was in the control of the defendants, even though, by subsequent explanation, some of the defendants are exonerated from the charge of negligence. *McCall, supra.* "[C]ontrol is exclusive

if it is shown that there was no possibility that a third party, *not a defendant*, could have caused the injury." (Emphasis in original.) *Id.* at 6, 165 N.W.2d at 89. Therefore, Darrah's cause of action fails if a third party, other than BMH or BMH's agents, could have caused Darrah's injuries.

Determining when Darrah's injuries were sustained will identify the entity that owed Darrah a duty of care. Determining who owed Darrah a duty of care concomitantly affects which entity could have been in exclusive control of the instrumentalities causing his injuries. For example, hospitals are generally responsible for the acts of their agents via vicarious liability and respondeat superior. See *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991). See, also, *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988). During surgery, however, the head surgeon has a nondelegable duty to provide health care and assumes exclusive control of the patient. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Swierczek, supra.* In addition, surgeons are not liable for the failure of hospital employees to execute reasonable instructions left for the treatment of the patient. *Reifschneider v. Nebraska Methodist Hosp.*, 222 Neb. 782, 387 N.W.2d 486 (1986).

In the instant case, Darrah allegedly sustained ulnar nerve damage while hospitalized at BMH. Ulnar neuritis, or ulnar neuropathy, is a disorder of the peripheral nervous system which may be caused by compression or entrapment of the ulnar nerve in the ulnar groove of the elbow. Ulnar neuropathy can be caused in several different ways.

BMH submitted the affidavits of James Bobenhouse, M.D., a board-certified neurologist; Edward Schima, M.D., a board-certified neurologist; and Helen Connors, Ph.D., a registered nurse. Drs. Schima, Bobenhouse, and Connors stated that one way ulnar neuropathy can be caused is by improperly inserting an IV into the arm. The doctors stated that a second way ulnar neuropathy can be caused is by pressure being placed on the ulnar nerve from prolonged and unadjusted placement of the arm while the patient is anesthetized during surgery and in the postsurgery recovery room. Dr. Connors further acknowledged that inserting an IV improperly and incorrectly positioning the body can both simultaneously contribute to ulnar neuropathy.

Dr. Schima stated that a third possible cause of ulnar neuropathy is overflexion of the ulnar nerve. Drs. Schima and Bobenhouse agreed, however, that some patients are predisposed to ulnar neuropathy and that such nerve damage can occur in the absence of negligence, especially during lower back surgery.

Drs. Schima and Bobenhouse agreed that incorrectly inserting an intravenous needle into Darrah's arm was an unlikely cause of his injuries, and agreed that Darrah's injuries were probably caused by pressure placed on the ulnar nerve during or after surgery, while Darrah was anesthetized. However, Dr. Connors stated that it was more probable that both improper positioning or incorrect IV insertion contributed to Darrah's ulnar neuropathy.

Dr. Bobenhouse noted that ulnar nerve damage can usually be prevented by appropriate elbow padding, body positioning, and arm movement. Dr. Bobenhouse admitted, however, that the need for such precautions varies from patient to patient and the type of surgery being performed. Dr. Schima stated that in some cases ulnar neuropathy can occur regardless of how the patient's body is positioned. In addition, Dr. Schima testified that based on the neurological findings, Darrah was likely to be predisposed to ulnar neuropathy. Moreover, Drs. Schima and Bobenhouse acknowledged that establishing how much of Darrah's injuries were caused before, during, or after surgery would be nearly impossible to determine.

Dr. Schima concluded that Darrah's ulnar neuropathy developed despite the exercise of reasonable care. Dr. Bobenhouse agreed and stated that nothing in Darrah's medical records indicated anything unusual occurred during Darrah's surgery to cause the ulnar nerve damage.

The record is unclear as to when and where Darrah's injuries occurred. As a result, the court is unable to determine who owed Darrah a duty of care and who was in exclusive control of the instrumentalities causing his injuries. In light of this uncertainty, we cannot say, as a matter of law, that there is no possibility a third party, other than BMH, could have caused Darrah's injuries. See *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969). As such, the district court was correct in

granting summary judgment because Darrah did not satisfy the first element of the doctrine of res ipsa loquitur—exclusive control. See, *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996); *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *McCall, supra.*

Nonetheless, we recognize that the underlying purpose of res ipsa loquitur is to assist plaintiffs with the often difficult task of producing facts sufficient to prove negligence. *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991). As we stated in *Swierczek*:

> "The very purpose of the doctrine of res ipsa loquitur is to allow a plaintiff who may have been unconscious or incapacitated during an operation the opportunity to establish negligence and causation by circumstantial evidence. A plaintiff who is under anaesthesia or otherwise incapacitated can identify neither the instrumentality nor the person(s) in control of the instrumentality. To place this burden of proof upon a plaintiff is to require the impossible."

*Id.* at 481, 466 N.W.2d at 519 (quoting *Dalley v. Utah Regional Med. Ctr.*, 791 P.2d 193 (Utah 1990)). Our holding does not impose any greater evidentiary burden upon plaintiffs utilizing the doctrine of res ipsa loquitur. However, "[i]t is never enough for the plaintiff to prove merely that the plaintiff has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 39 at 248 (5th ed. 1984).

In Darrah's final assignment of error, Darrah claims the district court erred in denying his motion to amend his petition. In Darrah's motion, he urged the district court to permit him to amend his petition, yet he alleged no new facts other than his desire to "amend his Petition to allege specific acts of negligence."

Amendment of a petition is not a matter of right. *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993); *Omaha Nat. Bank v. Koliopoulos*, 204 Neb. 752, 285 N.W.2d 496 (1979). Rather, a decision to grant or deny an amendment to a pleading rests in the discretion of the trial court. *Nebraska*

*Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991). Absent some mitigating factor which justifies raising new issues by a party after a motion for summary judgment has been heard and submitted, denying a motion to amend pleadings is not an abuse of discretion. *Yunghans v. O'Toole*, 199 Neb. 317, 258 N.W.2d 810 (1977); *Ogallala Fertilizer Co. v. Salsbery*, 186 Neb. 537, 184 N.W.2d 729 (1971). Unless evidence or testimony exists in the record indicating that a proposed claim or defense was newly discovered or that counsel was unaware of the claim or defense prior to the pending action, the proposed amendment is merely a belated effort to inject issues of material fact into a proceeding where previously the pleadings revealed none. *Yunghans, supra.*

The assignment is not meritorious. The judgment of the trial court is affirmed.

AFFIRMED.

GERRARD and STEPHAN, JJ., not participating.