PATTY L. WRIGHT, PERSONAL REPRESENTATIVE OF THE ESTATE OF RAQUEL S. WOODRUFF, APPELLANT, V. PRESTON RESOURCES, INC., ET AL., APPELLEES.

639 N.W.2d 149

Filed February 5, 2002.   No. A-00-1056.

Vincent M. Powers, of Vincent M. Powers & Associates, for appellant.

Daniel P. Chesire and Raymond E. Walden, of Lamson, Dugan & Murray, for appellees.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Patty L. Wright, personal representative of the estate of Raquel S. Woodruff, appeals from an order of the district court for Douglas County granting summary judgment to Preston Resources, Inc., Preston Investments, Inc., William Preston, and Linda Preston (hereinafter collectively referred to as "Preston"), in this premises liability action arising out of the murder of Woodruff in the basement of an apartment building owned and managed by Preston. Because we agree with the district court that there exists no genuine issue of material fact, we affirm.

## II. BACKGROUND

On August 22, 1997, Wright filed an amended petition in the district court for Douglas County, Nebraska. Wright alleged that

Preston was the owner and manager of certain real property located in Omaha, Nebraska. Wright alleged that Woodruff was "killed by a person or persons" while on the premises owned and managed by Preston on or about June 16, 1995. Wright alleged negligence on the part of Preston and sought recovery in tort for damages arising out of Woodruff's death.

On September 3, 1997, Preston filed an answer to the amended petition. Preston alleged that Woodruff was a trespasser and that she was killed by another trespasser on the premises. Preston denied any allegations of negligence, affirmatively alleged Woodruff was guilty of contributory negligence or assumption of the risk, and alleged that Wright failed to state sufficient facts to constitute a cause of action.

On February 29, 2000, Preston filed a motion for summary judgment. Preston alleged that there existed no genuine issue of material fact concerning Woodruff's status, the duty owed to her, or the circumstances of her killer's entry onto the premises and that Preston was entitled to judgment as a matter of law.

On April 24, 2000, Preston's motion for summary judgment was heard by the court. The court received various exhibits, including pleadings, answers to interrogatories, police reports, and a transcription of trial testimony in the criminal trial of Woodruff's killer. On September 18, the district court found, based on the exhibits offered at the hearing, that Woodruff was a trespasser at the time she was killed. The court found that Preston had not acted with willful or wanton negligence. As such, the court granted Preston's motion for summary judgment and dismissed the amended petition. This timely appeal followed.

### III. ASSIGNMENT OF ERROR

On appeal, Wright has assigned three errors, which we consolidate for discussion to one: The district court erred in granting Preston's motion for summary judgment.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material

fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Kouma v. Blue Valley Co-op*, 6 Neb. App. 714, 576 N.W.2d 854 (1998). In reviewing a motion for summary judgment, the question is not how a factual issue is to be decided, but, rather, whether any issue of material fact exists. *Id.* In reviewing a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997); *Kouma v. Blue Valley Co-op, supra.* However, conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment. *Darrah v. Bryan Memorial Hosp., supra*; *Kouma v. Blue Valley Co-op, supra.*

■ Summary judgment is properly granted only when the movant satisfactorily shows that no genuine issue of material fact appears from the pleadings, admissions, depositions, affidavits, and stipulations in the record or from the reasonable inferences deducible from that evidence and that the movant is entitled to judgment as a matter of law. *Terry v. Metzger*, 241 Neb. 795, 491 N.W.2d 50 (1992). Once the movant has met this burden, the nonmoving party has the burden of showing that an issue of material fact exists that prevents judgment as a matter of law. *Id.*

■ The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Olson v. SID No. 177, supra.* When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## 2. PREMISES LIABILITY

### (a) General Propositions

■ In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate cause, and damages. *Olson v. SID No. 177, supra.* In premises liability actions, the duty owed by a landowner to another person depends on the person's

status. To ascertain the duty owed by landowners to entrants upon their land, courts traditionally have classified entrants as either invitees, licensees, or trespassers. See *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

In *Heins v. Webster County, supra*, the Nebraska Supreme Court abrogated the distinction between invitees and licensees. However, the Supreme Court did so only prospectively, holding that the abrogation of the distinction between the two statuses would be applied only to causes of action arising after the date of the *Heins* opinion, August 23, 1996. The present action is based upon allegations that Preston acted negligently on or about June 16, 1995. Therefore, this case is governed by the premise existing in Nebraska cases prior to the *Heins v. Webster County* decision, that a landowner's duty of care depends upon whether the plaintiff (or in our case the decedent, Woodruff) is classified as an invitee, a licensee, or a trespasser. See, *Olson v. SID No. 177, supra*; *Heins v. Webster County, supra*. As such, we proceed as if the traditional distinctions which existed prior to the *Heins v. Webster County* decision are still in full force and effect.

An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. *Heins v. Webster County, supra*. Landowners owe invitees the duty of reasonable care to keep the premises safe for the use of the invitee. *Id.* A business visitor is considered an invitee, and thereby receives this higher degree of care, reasonable care, ostensibly because he or she conveys some benefit upon the landowner. *Id.*

A licensee has been defined as a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. *Id.* Courts have limited the duty that a landowner owes to a licensee. *Id.* An owner or occupant of premises owes only the duty to refrain from injuring a licensee by willful or wanton negligence or designed injury, or to warn him or her of a hidden danger or peril known to the owner or occupant but unknown to or unobservable by the licensee, who is required to exercise ordinary care. *Id.*

A trespasser is legally defined as a person who enters or remains upon the premises of another without a privilege to do so created by the possessor's consent, either express or implied. *Terry v. Metzger*, 241 Neb. 795, 491 N.W.2d 50 (1992). An owner of premises owes only a very limited duty to refrain from willfully or wantonly injuring a trespasser. See *id.*

### (b) Woodruff's Status

The first issue we must resolve is whether the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is a genuine issue as to Woodruff's status on Preston's property when she was killed. The district court found that the record would only support the inference that Woodruff was a trespasser. On appeal, Wright alleges that the district court erred in reaching this conclusion and in not affording Wright the benefit of reasonable inferences deducible from the evidence concerning Woodruff's status on the property. Our review of the record discloses no genuine issue concerning Woodruff's status, and we agree with the district court that the only reasonable inference deducible from the record is that Woodruff was a trespasser.

In support of the motion for summary judgment, Preston introduced various exhibits, including answers to interrogatories, affidavits, depositions, and a transcription of the testimony given in the criminal trial of the man convicted of killing Woodruff. These documents satisfied Preston's burden to establish that no genuine issue existed concerning Woodruff's status.

Attached to the affidavit of Linda Preston were Preston's tenant payment records between February and June 1995. These payment records, in addition to the amended petition, established that Woodruff was not at any time a tenant of Preston. In interrogatories, Preston requested that Wright disclose whom Woodruff might have visited on the premises, and Wright repeatedly answered that she "[did] not know." The closest Wright was able to come in this regard was to indicate that Woodruff "had a friend by the name of Carolyn Carson" who had resided on the premises. However, the tenant payment records established that Carson ceased being a tenant of Preston when she was evicted from the premises in April 1995, more than 1 month prior to the date of Woodruff's death.

Preston also offered the deposition of Linda Preston, taken by Wright. In her deposition, Linda Preston testified that Woodruff "wasn't supposed to be in [the] building. . . . [Woodruff] wasn't a tenant, she didn't belong there." Preston also offered the deposition of William Preston, in which he testified that "[t]o our knowledge, no tenant knew [Woodruff]," that "[w]e've never seen her before," and that "[s]he certainly had no business activity with us."

Preston presented evidence, as indicated above, to establish that Woodruff was not a tenant, that she was not on the premises for any business purpose associated with Preston, and that she was not a guest of any tenant. The reasonable inferences deducible from the evidence presented by Preston show no genuine issue of material fact concerning Woodruff's status and lead to the inference that Woodruff was on the property without any consent, either express or implied, of the premises owner. As such, Preston's evidence establishes that Woodruff was merely a trespasser on the property when she was killed.

Once Preston satisfied the burden of establishing the lack of a genuine issue of material fact, the burden shifted to Wright to establish that an issue of material fact exists concerning Woodruff's status. See *Terry v. Metzger*, 241 Neb. 795, 491 N.W.2d 50 (1992). Wright presented no evidence to establish that Woodruff had any legitimate purpose for entering Preston's property other than as a trespasser. Wright asserts on appeal that testimony from the criminal trial of Woodruff's killer indicates that according to Woodruff's sister, Woodruff was visiting somebody named "Jackie" or "Nickie" "[o]n Howard Street" in the week preceding her death. However, Woodruff's sister testified that she was not sure of the name and did not have a specific address of where the person might have lived. As such, the evidence did not provide any reasonable inference that Woodruff was visiting or was a guest of anyone residing in the apartment building where she was killed, especially when it is noted that a review of the tenant listings provided as part of Preston's evidence does not indicate any tenant with a name comparable to Jackie or Nickie residing at the property between January and June 1995.

Wright argues on appeal that the evidence "certainly does not preclude the possibility that [Woodruff] was actually invited to

the building by a tenant." Brief for appellant at 8. This argument, however, provides nothing more to substantiate Wright's assertion that Woodruff was anything other than a trespasser. At most, Wright has established that, through speculation or conjecture, one choice of possibilities is that Woodruff was invited onto the premises by a tenant.

The law in Nebraska is firmly established that conclusions based upon guess, speculation, conjecture, or a mere choice of possibilities do not create material issues of fact for purposes of summary judgment. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997); *In re Estate of Ellis*, 9 Neb. App. 598, 616 N.W.2d 59 (2000); *Kouma v. Blue Valley Co-op*, 6 Neb. App. 714, 576 N.W.2d 854 (1998). Although Wright was not required to eliminate all alternate theories regarding how Woodruff came to be on Preston's property, in light of the evidence presented by Preston, she was required to establish with a reasonable probability that Woodruff was an invitee or licensee. See *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999) (plaintiff not required to eliminate all alternate theories but required to establish with reasonable probability that accident happened in manner alleged in petition).

A review of the record presented to us leads us to conclude, as the district court did, that the only reasonable inference deducible from the evidence presented is that Woodruff was merely a trespasser on the date of her death. The district court did not improperly afford Preston the benefit of the inferences, and the court did not err in concluding that Woodruff was a trespasser. As such, the next issue we must address is the duty owed to Woodruff, a trespasser, by the premises owner, Preston, concerning the actions that led to Woodruff's death.

### (c) Preston's Duty

Wright argues on appeal that even if Woodruff was merely a trespasser, the evidence establishes that Preston breached even the limited duty owed to trespassers. Our review of the record, however, reveals that Preston acted in a manner foreclosing a conclusion of willful or wanton negligence and that Preston therefore did not breach any duty owed to a trespasser such as Woodruff.

Because Woodruff was a trespasser, Preston owed her a very limited duty with regard to her safety while on the property. See *Terry v. Metzger*, 241 Neb. 795, 491 N.W.2d 50 (1992). Preston was only obliged to refrain from willfully and wantonly injuring Woodruff. See *id*. A review of the record shows that no material issue of fact existed as to the willfulness and wantonness of Preston's conduct.

The requirements for "willful and wanton" conduct are well established:

> "In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or the omission to act, and a constructive intention as to the consequences. . . .
>
> "To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury."

(Emphasis in original.) *Id*. at 798-99, 491 N.W.2d at 53-54, quoting *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988).

For conduct to be willful or wanton, two criteria must be met. *Terry v. Metzger, supra*. First, the defendant must have actual knowledge of the danger. *Id*. Second, the defendant must have intentionally failed to act to prevent harm which was reasonably likely to result. *Id*. The record before us establishes that the second requirement is not met, and we will not further specifically address the first.

The record before us establishes that Preston had security doors on the apartment building to keep trespassers out. These security doors required the entry of a numerical code to open the doors from the outside and automatically locked upon closing. The record further establishes that when trespassers were found on the premises by maintenance or other employees of Preston, they were instructed to leave the premises. On occasion, law

enforcement was called to remove trespassers. The concern to be addressed is whether the evidence establishes that the premises owner took steps to prevent danger from befalling trespassers, and the uncontroverted evidence shows that Preston took steps to prevent trespassers from entering the premises. Taking such measures precludes a finding that Preston acted with such reckless disregard of security and right as to imply bad faith. See *Terry v. Metzger, supra.*

Regardless of whether Preston had actual knowledge of the danger, an issue we specifically decline to address, Preston's actions did not rise to the level of willfulness or wantonness. Because Woodruff was a trespasser, Preston was only required to take slight action to protect her. *Terry v. Metzger, supra.* Preston satisfied this duty by utilizing locking security doors and taking action to remove trespassers whenever discovered. Although these measures unfortunately failed to keep out the trespassers involved in this case, both Woodruff and her killer, the presence of such actions shows that Preston was more than indifferent concerning trespassers.

### (d) Resolution

We can find no authority in this state imposing any higher duty upon premises owners to protect one trespasser from the intervening criminal actions of another trespasser. Compare *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994) (cases cited therein concerning business invitees and third party criminal actions). The evidence in the record before us and our review of the applicable Nebraska law lead to only one conclusion: Preston refrained from willfully and wantonly injuring Woodruff. Reasonable minds cannot differ on this point. As such, the district court correctly granted Preston's motion for summary judgment.

## V. CONCLUSION

We find no genuine issue of material fact concerning Woodruff's status as a trespasser on Preston's property or Preston's fulfillment of the limited duty owed to trespassers. Accordingly, we affirm the district court's decision granting summary judgment to Preston.

AFFIRMED.