868 So.2d 1268 (2004)
Marvalyn LONGMORE and Ernie Longmore, as personal representative of the estate of Romaine O. Longmore, deceased, Appellants,
v.
SAGA BAY PROPERTY OWNERS ASSOCIATION, INC., Appellee.
No. 3D03-1456.
District Court of Appeal of Florida, Third District.
March 24, 2004.
Stone & Pestcoe and David Stone and Scott Pestcoe; Thomas M. Pflaum, Miami, for appellants.
Cole, Scott & Kissane and Betsy E. Gallagher and Dorothy C. Venable, Tampa, for appellee.
Before COPE, LEVY, and WELLS, JJ.
WELLS, Judge.
The parents of a drowning victim appeal dismissal of their wrongful death claim. We affirm on the authority of Saga Bay Property Owners Ass'n v. Askew, 513 So.2d 691 (Fla. 3d DCA 1987) (Saga Bay I).
While attending an after-school function, 16 year-old Romaine O. Longmore drowned in Saga Bay Lake, a man-made lake located behind the home of another student. Romaine's parents subsequently brought a wrongful death action against the Miami-Dade County School Board, two teachers employed by Romaine's school, and Saga Bay Property Owners Association, Inc., the owner of the man-made lake in which Romaine drowned.
With regard to Saga Bay, the Longmores alleged that Saga Bay knew that its lake had a precipitous drop-off ("from less than 69 inches (the height of decedent) to a depth in excess of 40 feet"), yet negligently failed to warn or provide life-guards to protect children from this "exceptionally dangerous concealed peril," resulting in Romaine's death.
The Longmores admitted at oral argument that there is a designated swimming area at Saga Bay Lake and that warning signs are posted in that area. Romaine *1269 was not, however, swimming at that area but was swimming at the lake-shore abutting a privately owned home.
Relying on Saga Bay I, the trial court dismissed the complaint. In Saga Bay I, we rejected the notion that a sudden drop off could constitute a dangerous condition or trap:
Thus, there is no liability for a child's drowning in a body of water, natural or artificial, unless there is some unusual danger not generally existing in similar bodies of water or the water contains a dangerous condition constituting a trap. Allen v. William P. McDonald Corp., 42 So.2d 706 (Fla.1949).... In the present case, none of the conditions which the Askews contend were so dangerous to their child provide a basis for owner liability.... Guillot v. Fisherman's Paradise, Inc., 437 So.2d 840 (La.1983)(no liability for two-year-old's drowning even though pond's sides went straight down and surface covered with thick, green algae, trash and debris); Corcoran v. Village of Libertyville, 73 Ill.2d 316, 22 Ill.Dec. 701, 383 N.E.2d 177 (1978)(no liability where drainage ditch had deceptively steep slope, irregular embankment, an "unnaturally pocketed" bed causing excessive accumulation of water, rubbish and debris). The lake's sharp change in depth is characteristic of lakes and does not constitute a concealed dangerous condition. Kinya v. Lifter, Inc., 489 So.2d 92 (Fla. 3d DCA 1986) (artificial bank's slope not so different from natural bodies of water); Hendershot v. Kapok Tree Inn, Inc., 203 So.2d 628 (Fla. 2d DCA 1967)(sudden drop-off two feet from shore); Howard v. Atlantic Coast Line R.R. Co., 231 F.2d 592 (5th Cir.1956)(applying Florida law; straight sides do not constitute hidden danger); Cortes v. Nebraska, 191 Neb. 795, 218 N.W.2d 214 (1974)(public recognizes that bodies of water vary in depth and that sharp changes can be expected); Plotzki v. Standard Oil Co., 228 Ind. 518, 92 N.E.2d 632 (same). That on the opposite shore of the lake... there was, as is common, an area cleared and set aside for swimming, does not mean, as appellees contend, that a person may have an expectation which the law will recognize that all parts of the shore will be the same as the cleared and developed swimming beach. See, e.g., Cooper v. Diesel Service, Inc., 496 S.W.2d at 384 (no liability for six year-old's drowning even though gentle slopes on three sides of artificial pond might lead child to be unaware of fourth side's steep drop). There is no other evidence concerning the lake or the circumstances of the drowning. [FN7]
FN7. It is thus apparent that there is no evidence that the lake contained a dangerous condition constituting a trap. For cases involving traps, see, e.g., Starling v. Saha, 451 So.2d 516 (Fla. 5th DCA 1984)(neighborhood child, who went into pond to swim, caught, held, and drowned by intake hose of drainage pump which was left running without supervision); Bichsel v. Blumhost, 429 S.W.2d 301 (Mo.Ct.App.1968) (child drowned after falling into a well covered by a concrete slab that had an opening eighteen inches square, and thus constituted an ultra-hazardous pitfall); Allen v. William P. McDonald Corp., 42 So.2d 706 (Fla.1949)(spoil banks from dredging hid steep drop into deep water and gave no warning to children playing on sand piles); Larnel Builders, Inc. v. Martin, 105 So.2d 580 (Fla. 3d DCA 1958)(same); Ansin v. Thurston, 98 So.2d 87 (Fla. 3d DCA 1957)(floating dock took child from shore out twelve feet over deep water to makeshift, tipsy raft).
*1270 Saga Bay I, 513 So.2d at 693-94 (emphasis added) (some citations and footnotes omitted).
Likewise, in Navarro v. Country Village Homeowners' Ass'n, 654 So.2d 167, 168 (Fla. 3d DCA 1995), we observed:
Under Florida law, the general rule is that the owner of an artificial body of water is not guilty of actionable negligence for drownings therein unless it is so constructed as to constitute a trap or unless there is some unusual element of danger lurking about it not existent in ponds generally. Kinya v. Lifter, Inc., 489 So.2d 92, 94-95 (Fla. 3d DCA), review denied, 496 So.2d 142 (Fla.1986). `The lake's sharp change in depth is characteristic of lakes and does not constitute a concealed dangerous condition.' Saga Bay, 513 So.2d at 693-94.
The Longmores concede that the owner of a body of water has a duty to warn of a peril "only if the peril has a character of a concealed trap or an unusual hazard not present in bodies of water generally." They claim, however, that our statement in Saga Bay I that this "lake's sharp change in depth ... does not constitute a concealed dangerous condition," applies solely to the facts proved in Saga Bay I (that is, to a 45 foot drop off approximately 40 to 60 feet from shore) and not generally to man-made lakes. We disagree. As Navarro confirms, our conclusion in Saga Bay I that a sudden drop off in a man-made lake is characteristic of conditions existing in natural lakes and, therefore, not a dangerous condition constituting a trap applies generally and is not circumscribed by the evidence adduced in Saga Bay I.[*]
The Longmores also cite to Allen v. William P. McDonald Corp., 42 So.2d 706, 707 (Fla.1949), to distinguish the case at hand from Saga Bay I. However in Allen, the Florida Supreme Court did no more than conclude that a "spoil bank of white sand adjacent to" the lake amounted to "an unusual element of danger," rendering it "more attractive than the ordinary pond," allowing plaintiffs to proceed on an attractive nuisance theory. The attractive nuisance doctrine is not applicable here.
The only factual allegation which might arguably distinguish the instant case from Saga Bay I and Navarro, is the association's superior knowledge of the drop off. Section 342 of the Restatement (Second) of Torts (1965) states:
Dangerous Conditions Known to Possessor
A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved.
The Longmores claim that by virtue of the prior Saga Bay litigation, the homeowners' association had superior knowledge of the steep drop and thus had a duty to warn. While it is true that no such superior knowledge was alleged in Saga Bay I, or Navarro, we did specifically observe that the sharp change in the water's depth "did not constitute a concealed dangerous condition." Thus we cannot see *1271 how we can apply Section 342, which requires a "condition ... that ... involves an unreasonable risk of harm," to produce a different result.
Thus, in accord with Saga Bay I and Navarro, we affirm the order under review.
NOTES
[*] We also note that before dismissing their action, the trial court gave the Longmores the opportunity to amend their complaint, however they elected not to do so.