DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BARBARA FELICIANO, as personal representative of the
Estate of Sthella Lopez Feliciano, a deceased minor,

Appellant,

v.

RIVERTREE LANDINGS APARTMENTS, LLC, a Florida
Limited Liability Company, and FIRST COMMUNITIES MANAGEMENT,
INC., a Florida Corporation,

Appellees.

No. 2D2023-0561

_____

May 10, 2024

Appeal from the Circuit Court for Hillsborough County; Paul L. Huey,
Judge.

James C. Blecke of The Haggard Law Firm, P.A., Coral Gables, for
Appellant.

David L. Luck, Ross F. Berlin, and Janice Lopez of Lewis Brisbois
Bisgaard & Smith LLP, Coral Gables; and Kathryn L. Ender of the Law
Firm of Dinsmore & Shohl, LLP, Miami (substituted as counsel of record),
for Appellees.


SLEET, Chief Judge.

Barbara Feliciano, as personal representative of the Estate of Sthella Feliciano, challenges the trial court's final summary judgment entered in favor of Rivertree Landings Apartments, LLC, and First Communities Management, Inc., in Feliciano's wrongful death action against them. Feliciano resided with her two children in an apartment complex owned by Rivertree and managed by First Communities. Her lawsuit against the two companies (collectively referred to herein as Rivertree) stems from the death of her six-year-old autistic daughter, who drowned in the portion of the Hillsborough River that abuts the apartment complex property. Because Feliciano has not identified any duty that Rivertree possessed and breached and because no issues of material fact remain, Rivertree was entitled to summary judgment as a matter of law. Accordingly, we affirm.

The Rivertree complex is situated on property adjacent to the Hillsborough River in Tampa. The complex contains fencing in certain areas, including around a pool that is several yards away from the river. The residents are free to walk unobstructed from the pool sidewalk down the grassy slope to the river. A retaining wall that is level with the ground runs the length of the portion of the riverbank that abuts the Rivertree property. Two signs that read "caution" are posted on the grassy area.

Feliciano and her children lived in a first-floor apartment. Her daughter required constant supervision, which was provided by Feliciano and her sixteen-year-old son. On the day of the incident, Feliciano's daughter exited their apartment unnoticed. Rivertree surveillance video depicts the child walking up and down the sidewalk that fronts the parking lot and eventually going around the back of the complex's leasing office toward the Hillsborough River. In the video, the child can

be seen walking to the river's edge, but she then is obscured by a tree; ripples can then be seen in the water, followed by splashing. There is no clear evidence definitively establishing how the child entered the river— whether it was the result of an accidental slip or a purposeful entry— because a tree obscures the view.[1]

Feliciano filed a two-count complaint, bringing one count of negligence against each of the defendants. In the complaint, Feliciano alleged that both defendants owed to residents of Rivertree "a duty of reasonable care to provide reasonably safe premises, including the common area of the Premises." The allegations as to both defendants were the same. Feliciano alleged that the defendants each breached their individual duty "by committing one or more of the following acts or omissions":

> A. Allowing a dangerous and defective condition to be created or to remain on its premises; to wit: an area of the Hillsborough River that was not sectioned off from the rest of the Premises by an adequate, non-defective [sic], operational barrier;
> B. Failing to maintain, and thereby neglecting, a barrier that was voluntarily put in place sectioning off the Hillsborough River from the rest of the Premises;
> C. Permitting the voluntarily-installed barrier to remain in a state of disrepair and/or non-functioning [sic] and failing

---

[1] The video shows the side of the leasing office farthest from where the child was standing, and the area near the riverbank is somewhat difficult to see. Although the trial court made a specific finding in its order granting summary judgment that "[w]hen the minor child reached the edge of the river, she stopped and then stepped or jumped in," our de novo review of the video leads us to conclude that it does not definitively show how the child entered the river. *See State v. Vazquez*, 295 So. 3d 373, 378 (Fla. 2d DCA 2020) ("[I]nsofar as a ruling is based on a video or audio recording, the trial court is in no better position to evaluate such evidence than the appellate court." (citing *Almeida v. State*, 737 So. 2d 520, 524 n.9 (Fla. 1999))).

to repair the barrier, thereby creating an extremely dangerous condition;

      D. Failing to warn Plaintiff . . . of these dangerous conditions when neither Plaintiff [n]or [her daughter] had prior knowledge of same.

After the parties conducted discovery, Rivertree moved for summary judgment, arguing that it was entitled to judgment as a matter of law. Rivertree maintained that based on Florida precedent, it had no duty to fence off access to the river along its property unless it could be established that something about the Hillsborough River at that location constituted a danger not normally found with similar bodies of water. In its motion, Rivertree acknowledged Feliciano's position that the area where the child went into the river was dangerous because

      a. The steep slope down to the water was greater than 4:1;[2]
      b. The shoreline was uneven;
      c. The water was moving in the river . . . ;
      d. There was a risk of alligators;
      e. There was no fence preventing entrance to the water;
      f. The bulkhead surrounding the shoreline was in disrepair and could cause tripping hazards;
      g. [The child] was severely [a]utistic and drawn to water.

Rivertree did not dispute any of these facts but rather stated that even if any or all of these facts were true, case law establishes that "they are not unusual dangers not present in rivers in Florida."[3] Accordingly, Rivertree maintained that Feliciano could not establish the first element of her negligence action as alleged in her complaint—that Rivertree owed

---

[2] Feliciano's water safety expert testified at deposition that a "4:1 slope" means that "you've got to go four feet horizontal before you can go one foot vertical . . . and that's the standard for retention and detention ponds in the State of Florida."

[3] Because there is no evidence or allegation that an alligator attacked the child, whether the Hillsborough River presented a risk of alligators is not relevant or material in the instant case.

a duty to its tenants to create a barrier between its property and the Hillsborough River.

Feliciano filed a response to Rivertree's motion, disputing numerous factual issues and arguing that Rivertree was not entitled to summary judgment as a matter of law because under section 83.51(2)(a)3, Florida Statutes (2020), it owed its residents a duty to maintain the common areas of the apartment complex in a "clean and safe condition."  She further alleged that the undisputed evidence established that the area behind the leasing office was "deadly, unsafe, and dangerous" in that it consisted of a "very steep, slippery hill which dropped into [forty-seven] inches of water directly into the Hillsborough River . . . and there was no fence or barrier at the water's edge to protect residents from falling into the water."  She also maintained that there were "giant holes and erosion at the water's edge, making it extremely deadly and dangerous," and that "[i]t was clear from . . . photos that these holes did not appear overnight and that this area was not maintained and [was] neglected."

At the summary judgment hearing, Feliciano offered expert witness testimony establishing that the slope of the grassy area leading to the river was steep and dangerous and "was in excess of the 4 to 1 standard that's advocated," although the witness did not quantify the actual ratio of the slope.  And he later clarified that such was the standard for artificial bodies of water.  The expert also opined that the grassy area leading to the river should have been fenced off.  Feliciano argued that a landowner has a common law duty to maintain its property in a reasonably safe condition and to warn of dangerous conditions and that a landlord has a similar statutory duty with respect to the complex's common areas.

Following the hearing, the trial court entered an order granting Rivertree's motion for summary judgment. The court noted that "[t]he focus of [Feliciano's] claim against Defendants is the allegation that Defendants breached a duty by failing to erect a fence or barrier separating the Rivertree Landings Apartments from the Hillsborough . . . River." The court concluded that there were no disputed issues of material fact and that any facts the parties did disagree about were not material to the ultimate issue of whether Rivertree had a duty that it had breached. The court further concluded that "based on the abundant case law supporting the . . . position that a property owner has no duty to erect a fence or barrier separating their property from a natural body of water," Rivertree was entitled to judgment as a matter of law. Finally, the court noted that the application of this body-of-water rule "is not dependent on the plaintiff's status" and that "[t]here is no distinction in the law regarding the status of the plaintiff as an invitee, trespasser, owner[,] or otherwise."

On appeal, Feliciano argues that the trial court erred in applying the body-of-water rule to absolve Rivertree of the duty it owes its tenants under section 83.51(2)(a)3. She maintains that under the statute, Rivertree owed a duty to her and her child—as tenant invitees to the property—to maintain the common area near the river in a safe condition. Finally, she argues that it was for the jury to decide whether Rivertree's failure to fence off this common area was a breach of that duty.

We review a trial court's granting of summary judgment de novo. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Sanders Farm of Ocala, Inc. v. Bay Area Truck Sales, Inc.*, 235 So. 3d 1010, 1012 (Fla. 2d DCA 2017). Pursuant to Florida Rule of Civil

Procedure 1.510(a), the trial court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Here, there are no disputed issues of <u>material</u> fact. Although the parties dispute some of the facts concerning how the child exited her apartment, the resolution of those factual issues has no effect on whether Rivertree had a duty to separate its property from the river by fence or some other barrier. *See Custom Design Expo, Inc. v. Synergy Rents, Inc.*, 327 So. 3d 427, 432 (Fla. 2d DCA 2021) ("To preclude summary judgment 'the "issue" must be one of *material* fact. Issues of nonmaterial facts are irrelevant to the summary judgment determination.' " (quoting *Cont'l Concrete, Inc. v. Lakes at La Paz III Ltd. P'ship*, 758 So. 2d 1214, 1217 (Fla. 4th DCA 2000))).[4] Accordingly, the question before this court is whether Rivertree is entitled to summary judgment as a matter of law.

---

[4] We recognize that the parties have a more serious factual dispute concerning how the child entered the river—if by accident or purposeful act. And the only evidence on that point, the surveillance video footage, is inconclusive as the child appears as a mere blurb of white that moves behind a tree and the video does not depict the actual moment that she entered the river. We come to this conclusion after our own review of the video, sitting in no worse a vantage point than that of the trial court, *see Vazquez*, 295 So. 3d at 378 (citing *Almeida*, 737 So. 2d at 524 n.9). However, under these circumstances, where all of Feliciano's allegations of duty and breach are based on Rivertree's failure to fence off or put a barrier along the riverbank, whether the child entered the river by accident or on purpose once she reached the water's edge is immaterial. *See Custom Design Expo*, 327 So. 3d at 432 ("A material fact, for summary judgment purposes, is a fact that is essential to the resolution of the legal questions raised in the case." (quoting *Cont'l Concrete*, 758 So. 2d at 1217)).

Florida's body-of-water rule controls the outcome of this case. That general rule is "supported by the decided weight of authority" and provides that owners of "bodies of water are not guilty of actionable negligence on account of drownings therein unless [the bodies of water] are constructed so as to constitute a trap . . . or unless there is some unusual element of danger lurking about them not existent . . . generally" in similar bodies of water. *Allen v. William P. McDonald Corp.*, 42 So. 2d 706, 706 (Fla. 1949). This is true even where the drowning victim is tragically a child. *See Saga Bay Prop. Owners Ass'n v. Askew*, 513 So. 2d 691, 693 (Fla. 3d DCA 1987) ("[T]here is no liability for a child's drowning in a body of water, natural or artificial, unless there is some unusual danger not generally existing in similar bodies of water or the water contains a dangerous condition constituting a trap."). Thus, absent an unusual, dangerous condition, "[a]n owner of a natural or artificial body of water has no duty to fence it." *Id.* And to the extent that Feliciano's complaint alleged a duty to warn, a property owner has "no duty to post guards or signs in areas not designated for swimming." *Id.*[5]

Therefore, the determination of a landowner's duty turns on whether the circumstances create some unusual element of danger "lurking about" the body of water that does not exist in similar bodies of water. *Allen*, 42 So. 2d at 706; *Hendershot v. Kapok Tree Inn, Inc.*, 203 So. 2d 628, 629 (Fla. 2d DCA 1967) ("[T]he critical issue is whether the

---

[5] The case law speaks in terms of the "owner" of the actual body of water. Rivertree obviously is not the owner of the Hillsborough River. But "[i]f the law is such for an owner of a body of water surely the law is at least the same for a nonowner" whose property abuts the body of water. *See Scott v. Future Invs. of Mia., Inc.*, 559 So. 2d 726, 727 (Fla. 4th DCA 1990).

garden and pond fall, under Florida case law, within the exception to the general rule: . . . [W]as there some unusual element of danger lurking about not existing in ponds generally?"); *cf. Kinya v. Lifter, Inc.*, 489 So. 2d 92, 94-95 (Fla. 3d DCA 1986).[6]  And "[t]he existence of a legal duty is a question of law for the court and not for the jury."  *Scott v. Future Invs. of Mia., Inc.*, 559 So. 2d 726, 727 (Fla. 4th DCA 1990); *see also Chirillo v. Granicz*, 199 So. 3d 246, 248 (Fla. 2016) ("The determination of duty, as an element of negligence, is a question of law . . . .").

Feliciano maintains that the conditions at issue here were unusual and dangerous because the ground was uneven, the slope was steep, and no fence or other barrier separated land from water.  In considering whether these conditions trigger the exception to the general body-of-water rule, we first note that Florida courts have yet to apply this exception to natural bodies of water like this area of the Hillsborough River.  In fact, the supreme court has expressly stated that the exception "would not apply to natural ponds and lakes because they are approached on a slightgrade [sic] and the waters warn one of the

---

[6] Some cases refer to this exception as an "attractive nuisance" exception.  *See generally Hendershot*, 203 So. 2d at 630 ("[I]n the instant case there was not alleged the presence of the unnatural, unusual element of danger of the type and nature that is necessary to invoke *the attractive nuisance doctrine*." (emphasis added)); *Kinya*, 489 So. 2d at 95 ("The lake was constructed in accordance with applicable local ordinances[,] and the 'slope' of the bank was not so different from natural bodies of water so as to render the lake *an attractive nuisance*." (emphasis added)).  But the greater weight of the case law makes clear that although there may be cases where the danger lurking is also an attractive nuisance, there is no requirement that it meet the definition of such; the critical question is whether the danger is one that is unique to the particular body of water and does not occur in similar bodies of water.  *See generally Allen*, 42 So. 2d at 706; *Saga Bay*, 513 So. 2d at 693.

danger."  *Allen,* 42 So. 2d at 707 (concluding, however, that the exception applied where "white [sloping] sand banks along the edge of an artificial pond or lake [would] entice children to play on them[,] creat[ing] an unusual element of danger" because "[t]here is nothing more enticing to a child or a gang of children than a sand pile"); *see also Hendershot,* 203 So. 2d at 630 (pointing out that in *Allen* and similar cases wherein the courts invoked the exception to the rule, "there was present *a man-made condition* which involved an unusual element of extreme danger" (emphasis added)).

Here, the exception to the body-of-water rule does not apply because the record does not demonstrate any evidence of a trap or unusual element of danger associated with the riverbank adjacent to the Rivertree complex that does not exist in similar rivers or on similar riverbanks.  *See Hendershot,* 203 So. 2d at 630 ("[I]n the instant case there was not alleged the presence of the *unnatural, unusual* element of danger of the type and nature that is necessary to invoke the [exception to the body-of water rule]." (emphasis added)); *Kinya,* 489 So. 2d at 95 (affirming final judgment in favor of landowner based upon the body-of-water rule where "the 'slope' of the bank was not so different from natural bodies of water so as to render the lake" unusually dangerous); *Navarro v. Country Vill. Homeowners' Ass'n,* 654 So. 2d 167, 168 (Fla. 3d DCA 1995) (holding that "deep water drop-off" in lake "owned, operated, and maintained" by homeowners' association did "not constitute a concealed dangerous condition" that would trigger the exception to the body-of-water rule as "sharp change in depth is characteristic of lakes" (quoting *Saga Bay,* 513 So. 2d at 693-94)); *Kaweblum ex rel. Kaweblum v. Thornhill Ests. Homeowners Ass'n,* 801 So. 2d 1015, 1018 (Fla. 4th DCA 2001) (holding that the slopes on each side of a canal did not

10

"transform this ordinary body of water into a trap or hidden danger"); *Scott*, 559 So. 2d at 727 (concluding that body-of-water rule applied where child drowned in water control canal abutting apartment complex property and there was no evidence of an "unusual danger not generally existing in similar bodies of water" (quoting *Saga Bay*, 513 So. 2d at 693)); *cf. Longmore v. Saga Bay Prop. Owners Ass'n*, 868 So. 2d 1268, 1268, 1270 (Fla. 3d DCA 2004) (concluding that "precipitous drop-off ('from less than [sixty-nine] inches (the height of decedent) to a depth in excess of [forty] feet')" in residential lake did not confer upon homeowners' association a duty to warn and provide lifeguards because it was "characteristic of conditions existing in natural lakes and, therefore, not a dangerous condition constituting a trap").  Here, the conditions Feliciano complains of—the slope leading down to the river, the river current, the uneven ground along the river—do not constitute traps or dangerous conditions that do not occur in similar bodies of water throughout the state.

Feliciano is correct that section 83.51(2)(a)3 requires "the landlord of a dwelling unit other than a single-family home or duplex [to], at all times during the tenancy, make reasonable provisions for . . . [t]he clean and safe condition of common areas."  But pursuant to case law, those "reasonable provisions" need only include fencing off a body of water if the particular circumstances create an unusual element of danger not presented by similar bodies of water.  As we have stated, that is not the case here.  Accordingly, under these circumstances, the landlord's duty to "make reasonable provisions for . . . [t]he clean and safe condition" cannot be stretched to create liability on the part of Rivertree for this tragedy.

11

Furthermore, we find no merit to Feliciano's argument that the body-of-water rule should not be applied to child invitees. Rather, we agree with the trial court that the case law does not make a distinction between invitees and trespassers or between adults and children when applying the body-of-water rule. To the contrary, Florida courts have applied the rule without distinction as to the status of the plaintiff. *See Saga Bay*, 513 So. 2d 691 (child resident of residential neighborhood); *Kinya*, 489 So. 2d 92 (child resident of apartment complex); *Navarro*, 654 So. 2d 167 (adult resident of residential neighborhood); *Longmore*, 868 So. 2d 1268 (invitee guest of a resident); *Scott*, 559 So. 2d 726 (invitee nephew of resident). Unfortunately, "drowning is a risk inherent in any body of water . . . [but] [t]he owner of a body of water is not liable" based solely on a plaintiff's failure or inherent inability to heed "the open and obvious danger of the water." *Saga Bay*, 513 So. 2d at 692.

We also note that Feliciano's reliance on the Fifth District's opinion in *Walt Disney World Co. v. Goode*, 501 So. 2d 622 (Fla. 5th DCA 1986), is misplaced because that case is distinguishable from the instant case. In *Goode*, a four-year-old boy drowned in a man-made canal that surrounded Cinderella's castle in the Magic Kingdom and that was designed and constructed by Disney. *Id.* at 623. In the ensuing wrongful death action, the Fifth District employed "the ordinary rules of negligence as they apply to a business invitee at a place of public amusement." *Id.* But the determination that Disney owed a duty to its business invitees was based on Disney's status as "a place of public amusement." *Id.*

> Places of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted. . . . One operating a place of amusement . . . where others are invited

> is charged with a continuous duty to look after the safety of his patrons. . . .
>
> . . . [R]easonable care as applied to a [place of public amusement] *requires a higher degree of diligence* than it does when applied to a store, bank or such like place of business.

*Id.* at 623-24 (quoting *Wells v. Palm Beach Kennel Club*, 35 So. 2d 720, 721 (Fla. 1948)).

Neither case law nor section 83.51 imposes a similar duty on landlords. The principles that require Disney to employ a higher degree of diligence to its patrons simply do not apply to Rivertree in the instant case, and they cannot be made to apply because the majority in *Goode* made a passing reference to the body-of-water rule in response to its dissenting colleague.

The sad and tragic nature of this case is not lost on this court, but there is no unusual element of danger present where the Hillsborough River is adjacent to the Rivertree complex that does not exist in other rivers throughout Florida. Accordingly, the general body-of-water rule applies to this case, and we must affirm.

Affirmed.

BLACK and ROTHSTEIN-YOUAKIM, JJ., Concur.

———————————————————

Opinion subject to revision prior to official publication.